UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LECONIA SEALES,**

    **Plaintiff,**       **CIVIL ACTION NO. 11-13390**

  **vs.**            **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**COMMISSIONER OF**     **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be denied, Defendant's Motion for Summary Judgment (docket no. 11) be granted, and Plaintiff's complaint be dismissed.

**II. PROCEDURAL BACKGROUND**

On February 12, 2009 Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging disability beginning February 2, 2009. (TR 15). The applications were denied and Plaintiff filed a timely request for a *de novo* hearing. On March 4, 2010 Plaintiff appeared with counsel in Detroit, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Christopher L. Williams, who presided over the hearing from Dallas, Texas. (TR 26-51). Vocational Expert (VE) Tammie C. Donaldson also appeared and testified at the hearing, as did medical expert Dr. Howard H. McClure Jr. In a March 26, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because she was capable of performing past relevant work as a scanner/operator, cashier/checker, and auditor. (TR

1

21).  The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review.  The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EXPERT TESTIMONY, AND RECORD EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was forty-eighty years old on her alleged disability onset date.  (TR 30).  She completed the twelfth grade and received a high school diploma.  (TR 39).  Her past relevant employment includes work as an assembly line assembler, auditor, and cashier.  (TR 32).  Plaintiff testified that she was required to lift up to fifty pounds as an assembler and cashier.  (TR 39-40).  She reported that she suffers from coronary artery disease, hypertension, and type II diabetes with peripheral neuropathy.  (TR 29-30).  She testified that her diabetes and hypertension are not well-controlled.  She claims that she experiences constant numbness and tingling in her feet, legs, hands, and arms which interferes with her ability to grip objects, stand, and walk.  (TR 34, 40-41).

Plaintiff claims that she can sit only ten minutes before needing to stand, stand only five minutes before needing to hold onto something for support, walk one half block before needing to rest, and she is unable to lift ten pounds with both hands while sitting.  (TR 35).  She reports that she takes multiple medications each day, including Diovan HCTZ, Priolosec OTC, Trazodone, Gabapentin, Hydralazine, Metformin, Lovastatin, Hypothiamine, fish oil, magnesium, insulin, and nitroglycerin as needed.  (TR 42).  Plaintiff claims that she experiences dizziness and fatigue from her medications.  (TR 36).  She reports a rapid, irregular heart rate and chest pain which she rated a five to seven on a ten-point scale even when resting.  Plaintiff testified that she gets relief from her

chest pain by laying down or taking nitroglycerin.

Plaintiff lives with her adult daughter and is currently separated from her husband of one year. She testified that her daughter does the majority of housework and cooking, although she can dust and prepare simple meals. She testified that she goes grocery shopping with her daughter, but claims that she only rides in the scooter and crosses items off the grocery list. (TR 44). Plaintiff testified that she spends approximately sixteen hours a day laying down and sleeping because of fatigue from her medications. (TR 44).

**B.     Medical Expert Testimony**

Medical expert Dr. Howard McClure testified that Plaintiff has a history of hypertension, diabetes, coronary artery disease with two stent placements, and moderate obesity with a BMI of 34. (TR 46-48). He testified that Plaintiff's last catherization showed some minor disease but also indicated that both stents were wide open and patent. Dr. McClure observed that the objective evidence showed that Plaintiff had normal left ventricular and dyastolic pressure with normal ejection fraction. He observed that Plaintiff had frequent complaints of chest pain, but noted that examinations showed no progression of her coronary disease. Dr. McClure opined that the pattern of Plaintiff's chest pain appeared to be non-ischemic. He also observed that the medical evidence showed that Plaintiff had no sensory abnormality in her toes or fingers. Dr. McClure concluded that Plaintiff should be assigned a residual functional capacity (RFC) of light work, to include sitting, standing, and walking six hours in an eight-hour work day at two hour intervals, lifting ten pounds frequently and twenty pounds occasionally, with no climbing of ropes, ladders, or scaffolds. (TR 48).

**C.     Medical Evidence**

On March 1, 2008 Dr. Kenneth Tobin and Dr. Garth Garrison evaluated Plaintiff for complaints of left chest pain and fatigue. The medical report shows that Plaintiff has a history of coronary artery disease with stent placement in August 2006 following a myocardial infarction, hypertension, and type II diabetes. (TR 183-90). Medical evidence also shows that Plaintiff suffers from dyslipidemia, GERD, renal insufficiency, and obesity. On March 3, 2008 Plaintiff underwent a cardiac catherization which revealed a normal left main coronary artery, thirty percent stenosis in the mid left anterior descending, ninety percent stenosis in the mid circumflex, and twenty percent stenosis in the right coronary artery with a widely patent stent observed in the mid-distal right coronary artery. (TR 187-89). There was no evidence of aortic valve stenosis or mitral valve regurgitation. During the catherization a stent was placed in the circumflex artery. (TR 47, 192, 201, 209). Subsequently, Plaintiff underwent a stress test that was suboptimal due to poor exercise tolerance and low stress. A stress EKG in October 2006 showed no inducible ischemia. (TR 204). In May 2008 Plaintiff was informed that her chest pain was not brought on by a heart attack. (TR 206). Also in May 2008, Plaintiff underwent a nuclear stress test that showed a normal myocardial perfusion. She also had a stress EKG that showed normal sinus rhythm with no arrhythmias at rest, after which it was concluded that Plaintiff was stable from a cardiovascular standpoint. (TR 209, 223).

In February 2009 Plaintiff underwent a cardiac catherization. This catherization revealed a left main coronary artery that was large, normal in appearance and free of obstructive disease; a left anterior descending with thirty percent stenosis in the mid segment; a circumflex showing a widely patent stent in the mid segment; a right coronary artery with twenty percent mid stenosis and a widely patent stent in the mid segment. Additionally, there was evidence of no significant

angiographic stenosis of the first diagonal, first marginal, the LpL, the right PDA, and the RPL. (TR 211-13). The report states that Plaintiff had non cardiac chest pain, no acute cardiopulmonary disease and no significant disease in the heart blood vessels. (TR 214, 220). A February 2009 echocardiogram revealed mild left ventricular hypertrophy, normal left and right ventricular systolic function, and no significant valvular dysfunction. (TR 228-29). An Electroneuromyography examination conducted February 2009 secondary to complaints of right handed numbness and tingling revealed full intact strength of the bilateral proximal upper extremities, no evidence of carpal tunnel syndrome or ulnar mononeuropathy at the wrist or elbow in either upper limb, and no evidence of radiculopathy in the right upper limb. (TR 230-31).

On May 30, 2009 Dr. Jared Griffith examined Plaintiff at the request of the state disability determination service. (TR 237-39). On examination Dr. Griffith observed that Plaintiff's gait was normal, she did not use an assistive device for ambulation, her lungs were clear, there was mild shortness of breath with walking exercises, Plaintiff had no difficulty getting on and off the examination table, her strength was preserved in all extremities, her hands had full dexterity and grip, range of motion of all joints was full, there was appropriate finger-nose-finger testing, and Plaintiff had appropriate nerve sensation except for an absent monofilament sensation along the fifth digit of the left hand extending up to approximately the mid forearm. (TR 238).

On June 2009 Susan Shaughnessy performed a Physical RFC Assessment and determined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, stand, walk, and sit approximately six hours in an eight-hour work day, with unlimited push/pull activities. (TR 241). Shaughnessy found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. Shaughnessy noted Plaintiff's claims that medication made it difficult

for her to concentrate, but observed that Plaintiff was able to read, watch television, and play board games. (TR 245). Shaughnessy concluded that Plaintiff's subjective complaints appeared to be far out of proportion to the objective medical evidence and physical findings.

A June 2009 medical report reveals that Plaintiff had normal sensation of her toes, normal range of motion of her toes and ankles, and normal sensation of her left foot except for decreased sensation of the heel, and decreased sensation over the heel and mid metatarsal of the right foot. Plaintiff was diagnosed with peripheral neuropathy. (TR 280).

On July 1, 2009 Plaintiff's treating physician, Dr. Amanda Kaufman, completed a Physical RFC Questionnaire. (TR 249-51). Dr. Kaufman documented that Plaintiff's medical symptoms included persistent dizziness, shortness of breath, fatigue with exertion, multiple heart attacks, and hand and foot pain. Dr. Kaufman described Plaintiff's hand and foot pain as diabetic neuropathy with shooting, electric pain several times an hour which rated an eight on a ten-point scale. Dr. Kaufman noted that Plaintiff's medications caused dizziness, vomiting, and fatigue. She noted that Plaintiff's pain and other symptoms were so severe as to constantly interfere with the attention and concentration needed to perform simple work tasks. (TR 250).

Dr. Kaufman indicated that Plaintiff could walk less than one block before resting. She also circled responses on the questionnaire showing that Plaintiff could sit for twenty minutes at a time before needing to stand, stand for fifteen minutes before needing to sit, stand and walk less than two hours in an eight-hour work day, sit for four hours in an eight-hour work day, with a requirement that Plaintiff would need to stand up and walk for three minute intervals every fifteen minutes. (TR 250-51). Dr. Kaufman opined that Plaintiff would require a job that would allow her to shift positions at will and take unscheduled breaks every two hours lasting approximately fifteen minutes.

(TR 251). She indicated that Plaintiff's legs should be elevated approximately six inches and remain elevated all day if Plaintiff was assigned to a sedentary job. Dr. Kaufman opined that Plaintiff could rarely lift less than ten pounds and never lift more than ten pounds. She further opined that Plaintiff could occasionally look up or down, turn her head, and frequently hold her head in a static position. Dr. Kaufman determined that Plaintiff had significant limitations with reaching, handling, and fingering, such that Plaintiff could never grasp, turn or twist objects, reach, or perform fine manipulations. Finally, Dr. Kaufman opined that Plaintiff could rarely twist, stoop, or crouch, and could never climb ladders or stairs. (TR 251).

In November 2009 Plaintiff was hospitalized for chest pain, unstable angina and rule out myocardial infarction. (TR 252). Subsequent examinations revealed no acute cardiopulmonary disease, normal cardiomediastinal silhouette, normal sinus rhythm, no significant valvular dysfuntion, but an abnormal EKG with a nonspecific T wave abnormality, and hypertensive cardiovascular disease with grade 1 diastolic dysfunction. Among other things, the medical report revealed that Plaintiff had angina-like pain without EKG or cardiac enzyme changes. (TR 254). Plaintiff was ruled out for myocardial infarction. (TR 259).

## IV.    VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as an assembler was medium exertional work with a specific vocational preparation (SVP) code of 2, past work as a scanner/operator at a library was classified as sedentary work with an SVP code of 4, past work as a cashier/checker was light work with an SVP of 3, and past work as an auditor for a parking garage

7

was sedentary work with an SVP of 4.[1] (TR 49). The ALJ asked the VE to consider an individual who was a younger individual on her disability onset date, who had a high school diploma, and who had the RFC given by Dr. McClure, in other words an RFC of light work, to include sitting, standing, and walking six hours out of an eight-hour work day at two hour intervals, lifting ten pounds frequently and twenty pounds occasionally, with no climbing of ropes, ladders, or scaffolds. (TR 48-50). The VE testified that Plaintiff could perform all of her past relevant work under this RFC with the exception of the assembler job. The VE further testified that an employer will generally tolerate a half to one day absence a month but not on an ongoing basis. (TR 50).

## V.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since February 2, 2009, and suffered from the severe impairments of a history of diabetes and hypertension, coronary artery disease with two stent placements, and obesity, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 17-20). The ALJ determined that Plaintiff retained the RFC to perform a limited range of light work, and concluded that Plaintiff was capable of performing her past relevant work as a scanner/operator, cashier/checker, and auditor. (TR 21-22). Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from February 2, 2009,

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704, at *3.

the alleged onset of disability, through March 26, 2010, the date of the ALJ's decision.

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant

work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ failed to give controlling weight to Dr. Kaufman's treating opinions and did not account for the side effects of Plaintiff's medications.  It is well-settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In the present case the ALJ considered the record in its entirety, discussed the objective medical evidence and Dr. Kaufman's July 2009 physical RFC, and compared Dr. Kaufman's findings to the objective examinations and diagnostic testing of record.  The ALJ acknowledged that

10

Dr. Kaufman's July 2009 physical RFC reported that Plaintiff had dizziness, shortness of breath, fatigue with any exertion, hand/foot pain, diabetic neuropathy, high blood pressure, numbness of the feet, and side effects from medications. The ALJ noted Dr. Kaufman's assessment that Plaintiff could not sit, stand, or walk eight hours in an eight-hour work day, could rarely lift ten pounds, and had limitations during postural activities. (TR 19). After analyzing the medical evidence, the ALJ concluded that Dr. Kaufman's physical RFC assessment was not based on the clinical examinations and diagnostic testing of record, but instead was based on the subjective allegations of Plaintiff. The ALJ then concluded that Dr. Kaufman's physical RFC assessment was not entitled to controlling weight, or any evidentiary weight at all because it was inconsistent with the evidence of record. (TR 19).

The ALJ reached this conclusion about Dr. Kaufman's physical RFC after finding that the examinations and testing failed to confirm that Plaintiff had a heart impairment, significant pain, or neurological deficits that caused the degree of physical limitations found by Dr. Kaufman. In particular, the ALJ reviewed the medical evidence related to Plaintiff's heart condition and noted that Plaintiff has a history of coronary artery disease with two stent placements. The ALJ observed that after the stent placements, Plaintiff had episodes of chest pain yet little to no clinical evidence that the pain was associated with her heart.

The ALJ noted that an examination in April 2008 showed that Plaintiff was stable with regard to her coronary artery disease and had done well with no active angina. In May 2008, following a bout of chest pain and shortness of breath, Plaintiff was informed that her pain was non cardiac in nature and may be related to GERD. An EKG confirmed that there was no significant heart involvement, showing a normal sinus rhythm with no arrhythmias at rest. A perfusion nuclear

11

test was normal. Plaintiff was subsequently informed that she was stable from a cardiovascular standpoint. The ALJ noted that a February 2009 cardiac catherization showed minor coronary artery disease with wide open stents, non cardiac chest pain, and no significant cardiopulmonary disease.

The ALJ discussed Plaintiff's history of hypertension, noting that the hypertension was controlled when she took medication. He also addressed the numbness in Plaintiff's hands and feet and her diabetic neuropathy, observing that electrodiagnostic testing in February 2009 did not show any carpal tunnel syndrome, neuropathy, or radiculopathy.

A review of the record demonstrates that the Electroneuromyography examination conducted in February 2009 revealed full intact strength of the bilateral extremities. Additionally, the evidence reflects that Plaintiff's gait was normal, she walked without the aid of an assistive device, she had no difficulty getting on and off examination tables, she had full strength in all extremities, full hand dexterity and grip, full range of motion of joints, and appropriate finger-nose-finger testing. Evidence suggests that Plaintiff had normal sensation of her toes, normal range of motion of her toes and ankles, and normal sensation of her left foot except for decreased sensation of the heel and decreased sensation over the heel and mid metatarsal of the right foot. In addition, Plaintiff had mostly normal nerve sensation, with the exception of absent monofilament sensation along the fifth digit of the left hand extending up to approximately the mid forearm.

The ALJ concluded that the evidence of record did not support Dr. Kaufman's assessment that Plaintiff was limited in her physical capabilities to the degree determined by Dr. Kaufman. Indeed, Dr. Kaufman's physical RFC is significantly more restrictive than even her own treatment notes imply, which generally indicate that Plaintiff had non cardiac chest pain with clean coronary arteries, generally stable medical conditions but that she was anxious about dying and had difficulty

sleeping. (TR 220-21, 278-79, 282-83). Even Dr. Kaufman's treatment notes do not support her opinion that Plaintiff would require restrictions in looking up and down, turning her head, reaching, handling, fingering, twisting, stooping, or require many of the other limitations she imposed in her RFC assessment. The fact that the ALJ attributed greater weight to the testifying medical expert's opinion than he did to Dr. Kaufman's assessment was not erroneous in this case. The ALJ gave good reasons for rejecting the medical opinion of Dr. Kaufman. His decision to attribute no weight to Dr. Kaufman's physical RFC is supported by substantial evidence and should not be disturbed.

Next, Plaintiff argues that the ALJ erred in failing to account for the side effects of Plaintiff's medications. The ALJ's written opinion states that he considered the complete record in making his assessment. In his opinion, the ALJ acknowledged on several occasions Plaintiff's claim that she experienced dizziness and fatigue from her medication. (TR 18-20). The ALJ simply concluded based on substantial evidence that the record did not substantiate Plaintiff's contention that side effects from her medicine produced the symptomatology and caused the disabling effects that she alleged. The ALJ did not err in finding that Plaintiff did not experience disabling medication-related side effects to the degree described by Plaintiff.

The undersigned recommends that Defendant's Motion for Summary Judgment be granted, Plaintiff's Motion for Summary Judgment be denied, and this case be dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 19, 2012         s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 19, 2012         s/ Lisa C. Bartlett
                             Case Manager